T. & H. MOTOR COMPANY ET AL. v. A. P. SANDS, SHERIFF.

(Filed 20 December, 1923.)

**Sheriffs—Claim and Delivery—Replevin—Retention of Property—Statutes—Negligence.**

When the sheriff of the county retains possession of the goods replevined in claim and delivery under C. S., 3403, instead of surrendering possession to the plaintiff who has given the replevin bond prescribed by C. S., 836, the status of his possession is changed from that of a custodian of the law, and his liability is to be determined under the

provisions of C. S., 836, ·and those of his official bond, and he is responsible for the loss of the goods when destroyed by fire in his possession, irrespective of any question of negligence on his part in keeping it.

CLARK, C. J., and CLARKSON, J., dissenting.

APPEAL by defendant from *Shaw, J.,* at June Term, 1923, of ROCKINGHAM.

Civil action, in claim and delivery, to recover the possession of an automobile.

Upon an agreed statement of facts, judgment was entered for the plaintiffs. Defendant appealed.

*A. W. Dunn and King, Sapp & King for plaintiffs.* ·
*Glidewell & Mayberry for defendant.*

STACY, J. The essential facts of this case are as follows:

1. On 15 December, 1921, the defendant, A. P. Sands, sheriff of Rockingham County, in the discharge of his duties as such officer, seized an automobile which was being used, in violation of the prohibition law, in transporting liquor along one of the public highways of Rockingham County.

2. Two men were riding in the car, one of whom was arrested, and the other made his escape. The one making his escape was not known to the sheriff, and he has been unable, up to the present time, to ascertain his identity. The one arrested was tried and convicted in the Superior Court of Rockingham County for unlawfully transporting liquor in said car, though it does not appear that he held "any right, title or interest in and to the property so seized."

3. On 7 November, 1921, the T. & H. Motor Company sold the automobile in question to one of the plaintiffs, C. Vance Smith, a resident and citizen of Guilford County, and took from him, by way of security for part of the purchase price, a chattel mortgage on the car, which said mortgage was duly registered in the office of the register of deeds for Guilford County, and has never been canceled or satisfied. This fact was made known to the defendant, but he declined to surrender the automobile to the plaintiffs on demand. Whereupon plaintiffs instituted this suit to recover possession of said car. Bond was duly given, and a writ of claim and delivery issued therefor, but defendant replevied, giving · bond as required by C. S., 836, and retained possession of the car, as he deemed it his duty to do, under C. S., 3403.

4. It is admitted that the plaintiffs were in no way connected with, or interested in, the liquor found in the car, or its transportation, and that they had no knowledge of the illegal use of the automobile.

5. Pending the trial of this action, and while the car was in the warehouse of the Union Motor Company for safe-keeping, the same was destroyed by fire, through no fault of the defendant.

Upon these, the facts chiefly relevant, the question presented for decision is whether the defendant is liable to the plaintiffs on his forthcoming bond. We think this question has been decided in favor of the plaintiffs and against the defendant in *Randolph v. McGowans,* 174 N. C., 203.

The defendant was authorized and required, under C. S., 3403, to seize the automobile in question and to keep the same until the guilt or innocence of the defendant could be determined upon his trial. This statute fully warranted the defendant in seizing the property and taking it into his possession. But when he was directed, in this action of replevin, to deliver the property to the plaintiff (which order relieved him from his obligation to hold it under the statute), he elected to retain the automobile in his possession and to give a bond for its forthcoming, as allowed by C. S., 836. The character of his possession was thereupon changed from that of a custodian or bailee, under C. S., 3403, to that of practically an insurer under his bond and under C. S., 836. *Randolph v. McGowans,* 174 N. C., p. 206. His present liability, therefore, is to be determined by the provisions of the latter statute.

In keeping with the general trend of authorities, it is the declared law of this jurisdiction that a plaintiff in replevin, in possession of the property under a replevin bond, as well as a defendant in replevin, retaining possession of the property under a forthcoming bond, is liable, at all events, for the return of the property, if the action be decided against him; and the fact that his failure to make return is caused by an act of God, or other circumstance beyond his control, is of no avail to relieve him from his obligation, nor is he to be discharged by a showing of a want of negligence on his part. C. S., 833 and 836.

Upon the record, and under the law as now written, the judgment in favor of plaintiffs must be upheld.

Affirmed.

CLARKSON, J., dissenting: I think the case at bar distinguishable from *Randolph v. McGowans,* 174 N. C., 206. In the instant case the suit is brought, not against A. P. Sands as an individual, but as sheriff of Rockingham County. It was the duty of this official, under the law, to seize any vehicle used in conveying liquor.

C. S., 3403, is as follows: "If any person, firm or corporation shall have or keep in possession any spirituous, vinous or malt liquors in violation of law, the sheriff or other officer of any county, city or town, who shall seize such liquors by any authority provided by law, is hereby

authorized and required to seize and take into his custody any vessel, boat, cart, carriage, automobile and all horses and other animals or things used in conveying, concealing or removing such spirituous, vinous or malt liquors, and safely keep the same until the guilt or innocence of the defendant has been determined upon his trial for the violation of any such law making it unlawful to so keep in possession any spirituous, vinous or malt liquors; and upon conviction of the violation of the law the defendant shall forfeit and lose all right, title and interest in and to the property so seized; and it shall be the duty of the sheriff having in possession the vessel, boat, cart, carriage, automobile and all horses and other animals or things so used in conveying, concealing or removing such spirituous, vinous or malt liquors, to advertise, and sell same under the laws governing the sale of personal property under execution."

Under the above law the defendant, under his oath of office, was in duty bound to safely keep the vehicle *"until the guilt or innocence of the defendant has been determined upon his trial."* When the vehicle was seized, two men were in the car, with forty gallons of whiskey. The vehicle was seized on the public highway of Rockingham County. One of the men was tried and convicted; the other made his escape. The car was being held pending the capture of the unknown man. The plaintiff took out claim and delivery, alleging it had a mortgage on the car. The suit was against the defendant as sheriff, and, as such, he gave replevy bond and stored the car in a garage—a modern, up-to-date storage room—and it was accidentally burned pending the trial of the issue.

The case of *South Ga. Motor Co. v. Jackson,* 184 N. C., 328, is distinguishable from the present case. That case decides:

"C. S., 3403, creating a forfeiture of an automobile used in the unlawful transportation of intoxicating liquors, and providing for its sale, etc., by its express terms relates only to the interest therein of the violator of the law upon his conviction, and cannot be extended by legal construction to include the interest of a mortgagee of the automobile who is entirely ignorant and innocent of the unlawful act of which the defendant has been convicted; nor will the failure of registration of the mortgage affect the matter, under our registration laws enacted for the protection of creditors and purchasers for a valuable consideration," etc.

The sheriff, as an officer of the law, gave the bond to hold the car as evidence, under the statute. He used every care and caution, and it was burned in the garage. Under the statute then in existence he acted in good faith, and his conduct should not be "weighed in gold scales." Under the statute now in force, provision is made for cases of this kind. Public Laws 1923, ch. 1, sec. 6. When the vehicle is seized, as in the present case, "such officer shall at once proceed against the person

arrested under the provisions of this act in any court having competent jurisdiction; but the said vehicle or conveyance shall be returned to the owner upon execution by him of a good and valid bond, with sufficient sureties, in a sum double the value of the property, which said bond shall be approved by said officer, *and shall be conditioned to return said property to the custody of said officer on the day of trial to abide the judgment of the court."*

Officers of the law must obey the law. With the mandate of the statute positively requiring the sheriff to keep the vehicle "until the guilt or innocence of the defendant has been determined," he performed his duty and replevied the vehicle.

I· cannot, under the facts in this case, see how an officer should suffer for doing his duty.

CLARK, C. J., dissenting: The plaintiffs took out claim and delivery, claiming to be owners of a chattel mortgage on an automobile. The defendant executed a replevy bond denying the right of plaintiffs to recover possession of the car, which, while acting in his official capacity as sheriff of Rockingham County, he had seized while it was being used for transporting, in violation of law, forty gallons of whiskey, and for the further reason that one of the occupants of said car at said time had been tried and convicted for the unlawful transportation of whiskey and the other was unidentified and had escaped. Pending the trial of the plaintiffs' claim, the automobile in question, which was stored in a local garage, was accidentally destroyed by fire along with the garage and other cars therein, and there was no evidence that there was any negligence on the part of the sheriff or the garage.

The defendant sheriff had seized the car and held the same pending the time when he should ascertain who the man was who made his escape at the time of the seizure or until its title was decided by the court, as the law of this State directed he should do.

The car was destroyed by fire, a circumstance beyond the control of the sheriff, and admitted in the "facts agreed," due to no fault of his. He was not the owner of the car, and in giving the forthcoming bond, as required by the writ served on him, he did not set up ownership. This had passed to the State of North Carolina upon the conviction of the occupant for transporting whiskey, subject only to any interest of a third party.

This is not a case where the possession of the defendant was wrongful *ab initio,* for it was the duty of the defendant sheriff, acting under mandate of law, to retain possession of the automobile, first, for use as evidence in the trial of the criminal action against the man who

escaped, and second, to be turned over to the State under the judgment of the court confiscating the car to the State, if it should so order.

The case was submitted upon an agreed state of facts which is silent as to whether C. Vance Smith, the owner of the car, had guilty knowledge of the use to which the car was being put. There was no serious contention that he did not have this guilty knowledge, and the case turns solely upon the rights of the mortgagee, the motor company. It was the duty of the defendant sheriff to retain possession of this car, for in case the mortgagees sustained their claim, then the excess in value over and above the mortgage would belong to the State. The defendant sheriff was not the owner of the property in question nor did he claim to be. He was holding the car as the law commanded him to do, to be turned over upon the final determination of the criminal action to the owners—the mortgagee or the State—as the judgment of the court might determine. This case is therefore entirely different in principle from *Randolph v. McGowans,* 174 N. C., 203, relied upon by the plaintiffs, which was an action between individuals over a cow, no official duty being imposed upon the defendant.

It would be "hard lines" upon the sheriffs of the State, when honestly and faithfully endeavoring to execute the mandate of the people of the United States in the Eighteenth Amendment and the mandate of the ballot box in their own State, to suppress the liquor traffic, to hold that they must surrender possession of an automobile captured when filled with forty gallons of whiskey, when some distant company shall present to him a claim to possession as mortgagee, when he has no opportunity to examine the correctness of their claim, the registration and *bona fides* of the mortgage, and when the statute requires that he should hold the machine subject to the future order of the court until it shall be determined who is the owner thereof.

We have had no such case as this. On the contrary, even when a defendant was holding the machine in his individual capacity, and purely as bailee, this Court has held in *Beck v. Wilkins,* 179 N. C., 231, that even where the defendant owner of a garage has received an automobile for repair he is regarded as a bailee and is "not liable for its destruction by fire if he observed ordinary care for its safe-keeping," which could only be determined by the verdict of a jury. This case is printed as a leading case in 9 A. L. R., 554, and is sustained by an overwhelming majority of decisions occupying 18 pages of notes, and the annotations on page 570 state that it is also supported by the cases in this Court of *Lyman v. R. R.,* 132 N. C., 721, and *Hanes v. Shapiro,* 168 N. C., 24. In the latter case *Walker, J.,* in a very learned opinion (page 28) says: "The rights and liabilities of the parties to a bailment, as we shall see, depend primarily upon which one is to receive the

benefits of the transaction. The law justly imposes a stricter liability upon the one who is to receive the whole benefit of the bailment than upon one who entered into it solely out of good will and for the accommodation of the other party."

In this case, the sheriff had no interest whatever in the automobile, which was taken in strict accord with the authority conferred by the statute and in the line of his duty, and it was held by him according to the provisions of the statute until the criminal action should be disposed of and the ownership of the machine decided.

Under the Federal statute, a machine, horses or other property seized while being used in the illicit manufacture or transportation of liquor is confiscated to the Government—not only the interest of the party using it but the interest of the mortgagee and of the owner claiming to have rented it to the violator of law. The Court in this State has not sustained that doctrine, and it is common knowledge that the liquor traffic has been much aided by fictitious mortgages and alleged ownership of such property in other persons than those directly engaged in violating the law. Under these circumstances the officer of the law was justified in holding the property until, in the manner directed by the statute, its ownership should be determined.

Certainly the officer, who received no benefit from holding the machine and was simply endeavoring to discharge his duty under the statute, and who admittedly was guilty of no negligence in housing the machine, should not be made responsible when, under our own decisions above cited, he would not be liable even if he had been the holder of the machine for repairs in a garage, unless proven to be negligent. *Beck v. Wilkins, supra.*

There is no statute nor indication of a statute in North Carolina holding a faithful, conscientious officer, who discharges his duty in taking over an automobile while in use for the illicit transportation of liquor, an insurer while holding it in compliance with the statute, when it has been accidentally destroyed without fault or negligence on his part. There is no statute making him liable as insurer under these circumstances. The Court has never so held heretofore in any decision, and should not now by judicial decree place such liability on its own accord upon the sheriffs of the State. To create such new liability by judicial decree will sorely increase the difficulty of enforcing the law against the manufacture and transportation of intoxicating liquor.